UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN DRAGASITS,<br><br>                              Plaintiff,<br><br>v.<br><br>DR. JIN YU,<br><br>                              Defendant. | Case No.:  16-cv-01998-BAS-JLB<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br><br>**[ECF No. 51]** |

Before the Court is Defendant Dr. Jin Yu's Motion to Dismiss Plaintiff Stephen Dragasits' Second Amended Complaint brought under the Civil Rights Act, 42 U.S.C. § 1983.  (ECF No. 51).  The Court submits this Report and Recommendation to United States District Judge Cynthia Bashant pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1 of the Local Rules of Practice for the United States District Court for the Southern District of California.  After a thorough review of Plaintiff's Second Amended Complaint, Defendant's motion, Plaintiff's opposition, and all supporting documents, and for the reasons discussed below, the Court **RECOMMENDS** that the District Court **GRANT** Defendant Yu's Motion to Dismiss (ECF No. 51) and dismiss Plaintiff's Second Amended Complaint.

///

# I. PROCEDURAL BACKGROUND

Plaintiff Stephen Dragasits, a state prisoner proceeding *pro se* and *in forma pauperis*, initiated the present suit by filing a complaint in this Court on August 8, 2016. (ECF No. 1.) Plaintiff alleged that the State of California, the Richard J. Donovan Correctional Facility ("RJDCF"), several RJDCF health care officials, and a Deputy Director of the California Department of Corrections and Rehabilitation's Health Care Services Appeals Branch denied his Eighth Amendment, Fourteenth Amendment, and California state law rights to proper medical treatment and due process while he was incarcerated at RJDCF. (*See id.* at 27–39.)[1]

On November 15, 2016, the Honorable Roger T. Benitez *sua sponte* dismissed Plaintiff's claims against Defendants the State of California, RJDCF, and individual health care officials Gines, Guldseth, Kelso, and Van Buren. (ECF No. 5 at 10.) In addition, Judge Benitez *sua sponte* dismissed Plaintiff's Fourteenth Amendment due process claim against all named Defendants. (*Id.*) Remaining Defendants Dr. Jin Yu, Dr. R. Walker, Dr. S. Roberts, Dr. M. Glynn, and California Department of Corrections and Rehabilitation ("CDCR") Deputy Director J. Lewis filed a motion to dismiss the remaining claims in Plaintiff's complaint. (ECF No. 12.)

On September 13, 2017, Judge Benitez adopted this Court's Report and Recommendation and dismissed all of Plaintiff's claims against Defendants. (ECF No. 26.) The Court dismissed without leave to amend Plaintiff's Eighth Amendment claims against Defendants Walker, Roberts, Glynn, and Lewis relating to their denial of his health care appeals. (*Id.* at 5.) The Court also dismissed without leave to amend Plaintiff's Eighth Amendment claim against Defendant Roberts for deliberate indifference under a theory of supervisory liability. (*Id.*) Plaintiff was granted leave to amend his Eighth Amendment

---

[1] Citations to documents filed on the public docket of this action refer to the pagination assigned by the CM/ECF system.

claims for deliberate indifference against Defendants Yu, Walker, Glynn, and Lewis and his state law claims for medical negligence and malpractice. (*Id.* at 6.)

On October 10, 2017, Plaintiff filed a First Amended Complaint ("FAC"). (ECF No. 27.) In his FAC, Plaintiff reasserted his Eighth Amendment and state law claims against Defendants Yu, Walker, Glynn, and Lewis. (*Id.*) Plaintiff also reasserted his Eighth Amendment claim against Defendant Roberts, which Judge Benitez previously dismissed with prejudice. (*Id.*) On November 7, 2017, Defendants filed a motion to dismiss Plaintiff's FAC. (ECF No. 36.)

On July 27, 2018, Judge Bashant adopted this Court's Report and Recommendation and dismissed all of Plaintiff's claims against Defendants. (ECF No. 47.) The Court dismissed without leave to amend Plaintiff's claims against Defendants Walker, Glynn, and Lewis. (*Id.* at 6.) The Court dismissed with leave to amend Plaintiff's Eighth Amendment claims against Defendant Yu, permitting Plaintiff a second and final opportunity to amend his allegations regarding Defendant Yu. (*Id.*)

On September 4, 2018, Plaintiff filed a Second Amended Complaint ("SAC"). (ECF No. 50.) In his SAC, Plaintiff reasserts his Eighth Amendment claim and two state law claims against Defendant Yu and adds a previously unasserted First Amendment claim. (*Id.* at 28, 31, 44, 48.) On September 24, 2018, Defendant Yu moved to dismiss Plaintiff's SAC. (ECF No. 51.) Plaintiff filed an opposition more than three months later on December 26, 2018.[2] (ECF No. 56.) Defendants filed a reply on December 27, 2018. (ECF No. 57.)

///

---

[2] On October 25, 2018, the Court granted in part Plaintiff's *ex parte* motion for an extension of time to file his opposition. (ECF No. 54.) The Court's Order extended the deadline for Plaintiff to file an opposition by thirty days to November 23, 2018, and cautioned Plaintiff "that a failure to file an opposition by the deadline ordered may constitute a consent to the granting of the motion" under Civil Local Rule 7.1(f)(2)(b). (*Id.* at 1–2.) Although Plaintiff dated his opposition November 20, 2018, the Court did not receive his opposition until December 20, 2018, nearly a month after the court-ordered deadline. (*See* ECF No. 56 at 2, 23.)

## II. FACTUAL BACKGROUND[3]

Plaintiff's SAC largely contains the same factual allegations as his original complaint and FAC. A more detailed recitation of facts as to Plaintiff's Eighth Amendment claim was set forth in the two Report and Recommendations issued on the first and second motions to dismiss and will not be repeated here. (*See* ECF Nos. 21 at 2–11; 46 at 3–5.) A summary of the most relevant facts as to Plaintiff's First Amendment retaliation claim is provided here.

Plaintiff is a state prisoner confined at RJDCF in San Diego, California. (ECF No. 50 at 1.) Prior to arriving at RJDCF, Plaintiff was temporarily confined at the California Institution for Men. (*Id.* at 30–31.) He was transferred to RJDCF on or around December 2, 2013. (*Id.* at 38.) Plaintiff alleges that he suffers from several arthritic ailments and degenerative diseases that involve chronic pain in his neck, back, elbows, knees, and feet. (*See id.* at 6, 17–24.) In addition, Plaintiff alleges that he has a history of syncope and dizziness dating back to 2012. (*See id.*) Plaintiff asserts that on September 13, 2013, medical providers at the California Institution for Men issued him a lower bunk chrono for his medical conditions. (*Id.* at 16; 209.) The crux of the instant case is that Plaintiff did not have a lower bunk chrono at RJDCF for seven months during 2015. (*Id.* at 46.)

Defendant Yu was Plaintiff's primary care physician at RJDCF and saw Plaintiff approximately eight times between February 10, 2015, and August 21, 2015. (*See id.* at 28, 80, 109–19.) Plaintiff's first two appointments with Defendant Yu were follow-up visits on February 10, 2015, and April 21, 2015. (*Id.* at 117, 119.) It appears that it was at Plaintiff's third appointment with Defendant Yu, on May 13, 2015, that Plaintiff first asked Defendant Yu to renew his lower bunk chrono, which Plaintiff alleges would expire on

---

[3] The allegations contained in Plaintiff's SAC are accepted as true for purposes of assessing Defendant Yu's Motion to Dismiss only. In addition, this Report and Recommendation does not provide a summary of all of the facts presented in the SAC but only those that are relevant to Plaintiff's claims against Defendant Yu.

June 17, 2015.[4] (*Id.* at 17, 115.) After physically examining Plaintiff and reviewing his medical records, Defendant Yu found there was no medical indication that Plaintiff's condition warranted a lower bunk or double mattress and declined to renew Plaintiff's chronos.[5] (*Id.*) However, Defendant Yu ordered x-rays of Plaintiff's neck and lumbar spine "to better understand the medical issues" and noted that he "may reevaluate consideration" for the requested chronos after reviewing the x-ray results. (*Id.*) On or around the same day, Plaintiff filed an administrative CDCR 602 Health Care Appeal ("602 appeal") challenging Defendant Yu's decision not to renew Plaintiff's lower bunk and double mattress chronos. (*Id.* at 61.)

On June 5, 2015, Defendant Yu interviewed Plaintiff in response to the 602 appeal, and Plaintiff again requested a renewal of his lower bunk chrono. (*Id.* at 61, 111.) Defendant Yu's medical notes indicate that on May 29, 2015, he had observed Plaintiff playing basketball. (*Id.* at 111.) His notes also indicate that he discussed Plaintiff's x-ray results with Plaintiff, and then physically examined Plaintiff.[6] (*Id.*) Based on his observation of Plaintiff playing basketball, Plaintiff's x-ray results, and his examination of Plaintiff, Defendant Yu again denied Plaintiff's request to renew his lower bunk chrono,

---

[4] Plaintiff alleges that on June 17, 2014, Dr. Mohan Garikaparthi "documented an Order on a CDC 7221" that updated Plaintiff's lower bunk and double mattress chronos to have a June 17, 2015 expiration date. (ECF No. 50 at 17.) Plaintiff does not attach the alleged order. Plaintiff does attach Dr. Garikaparthi's notes from a June 17, 2014 appointment, but Dr. Garikaparthi noted that Plaintiff asked only for an updated double mattress chrono, and not a lower bunk chrono. (*Id.* at 371.) Further, Defendant Yu's notes from Plaintiff's April 21, 2015 appointment indicate that, as of April 21, 2015, the only chrono recorded in the "entire [c]hrono section" for Plaintiff was a lower bunk chrono dated September 13, 2013. (*Id.* at 117.) Whether Dr. Garikaparthi ever updated Plaintiff's lower bunk chrono, and if so, whether it had an expiration date of June 17, 2015, is unclear from the records before the Court.

[5] Defendant Yu found that Plaintiff was not in acute distress; could stand and walk erect and without limping; could get in and out of the examination chair multiple times without difficulty; could turn his body, reach for objects, and bend without difficulty; showed no signs of tenderness in his back; and showed no atrophy in his lower extremities. (ECF No. 50 at 115.) Defendant Yu also noted that the cardiology department had not observed an arrhythmia after monitoring Plaintiff's heart for over two years and Plaintiff had not suffered a syncope episode since he entered the RJDCF system. (*Id.*)

[6] Defendant Yu noted that Plaintiff did not show signs of atrophy, was quick to get in and out of the examination chair, and was walking erect and normally, and was not in acute distress. (ECF No. 50 at 111.)

explaining to Plaintiff "that there was no indication at this time" that his medical needs warranted a lower bunk. (*Id.*) Defendant Yu noted that he would "remind [Plaintiff] that he can appeal further." (*Id.*) He also offered to prescribe Plaintiff pain medication and told Plaintiff "he can come back any time for medication." (*Id.*) That same day, after Plaintiff's appointment,[7] Defendant Yu filed a CDCR 7410 Comprehensive Accommodation Chrono ("7410 chrono") updating Plaintiff's housing accommodations to "Unrestricted" and "Permanent." (*Id.* at 214.) Plaintiff alleges that this 7410 chrono "took away" his lower bunk chrono before its June 17, 2015 expiration date. (*Id.* at 14.)

On June 9, 2015, Plaintiff filed a second 602 appeal challenging Defendant Yu's decision not to renew his lower bunk and mattress chronos. (*Id.* at 70.) On the form, Plaintiff stated that he believed Defendant Yu "spited" him because of his first 602 appeal. (*Id.*)

On June 22, 2015, Defendant Yu interviewed Plaintiff in response to his second 602 appeal, and Plaintiff again requested that Defendant Yu renew his lower bunk chrono. (*Id.* at 70, 113.) Defendant Yu physically examined Plaintiff and still saw no need for a lower bunk.[8] (*Id.* at 113.) Plaintiff also complained of left knee pain. (*Id.*) Despite noting that Plaintiff's left knee did not show any "laxity, tenderness, or swelling," Defendant Yu ordered x-rays of Plaintiff's knee to determine if there were any abnormalities. (*Id.*)

On July 20, 2015, Defendant Yu saw Plaintiff again, and after physically examining Plaintiff, once again found that a lower bunk and double mattress were not medically necessary.[9] (*Id.* at 109.) Defendant Yu's notes indicate that he told Plaintiff that his lower

---

[7] The timestamp on Defendant Yu's June 5, 2015 medical notes is 9:28 AM, and the timestamp on the June 5, 2015 7410 chrono is 9:37, presumably AM. (*Id.* at 111, 214.)

[8] Defendant Yu observed Plaintiff walk erect, quickly, and without limping, and observed Plaintiff get in and out of a chair quickly and without difficulty. (ECF No. 50 at 113.) Defendant Yu noted that he did not see any atrophy and that Plaintiff's "upper extremity" was "very muscular." (*Id.*)

[9] Plaintiff saw Defendant Yu for, among other things, multiple complaints of pain. (ECF No. 50 at 109.) Plaintiff complained that his left knee still hurt and that he could hear it crack. (*Id.*) Defendant Yu examined Plaintiff's knee and noted that there was no tenderness or swelling, that Plaintiff came into the clinic erect and not limping, that Plaintiff was able to sit on a chair slowly, and that Plaintiff hopped onto the examination table without difficulty. (*Id.*)

bunk was denied "because he was playing basketball and I did not see any deficit at the time." (*Id.*) He also noted that he told Plaintiff to wait for the determination of his appeals, which "would maybe grant his request." (*Id.*) Defendant Yu also ordered x-rays of Plaintiff's elbow and referred him to a physical therapist. (*Id.*)

Plaintiff alleges that on August 3, 2015, he fell from his upper bunk for the first time. (*Id.* at 28–29.) Plaintiff saw Defendant Yu again on August 20, 2015. (*Id.* at 28.) Nothing in Defendant Yu's detailed medical note indicates Plaintiff mentioned the fall (ECF No. 1 at 281–82),[10] and Plaintiff does not allege that he informed Defendant Yu of the alleged fall. Defendant Yu noted that he had seen Plaintiff playing basketball, and once again found that Plaintiff's medical condition did not merit a lower bunk. (*Id.*) Plaintiff communicated to Defendant Yu that he was "building up [his] case" for a lower bunk. (*Id.*)

The next day, on August 21, 2015, Plaintiff alleges that he fell for a second time while trying to climb onto his upper bunk. (ECF No. 50 at 30.) Defendant Yu was onsite and saw Plaintiff the same day, but declined to issue a lower bunk chrono before reviewing the results of the x-rays he ordered.[11] (ECF No. 1 at 232–34.) This was Plaintiff's last visit with Defendant Yu, who subsequently left RJDCF. (ECF No. 50 at 80.) Plaintiff alleges that he fell off the upper bunk once more before he was issued a permanent lower bunk chrono on December 28, 2015. (*Id.* at 216, 220.)

Plaintiff's first 602 appeal contesting Defendant Yu's decision not to renew his lower bunk and double mattress chronos was denied at every level of review up to the final, third level of review. (*Id.* at 61–68.) At each level of review, it was determined that Plaintiff's medical record did not indicate the need for a lower bunk or double mattress chrono, consistent with Defendant Yu's findings.[12] (*See id.*) Plaintiff's second 602 appeal

---

[10] Plaintiff references the contents of Defendant Yu's medical notes from his August 20, 2015 appointment in his SAC, but does not attach Defendant Yu's notes as an exhibit, as he did in his original complaint.
[11] As per the treatment notes written by R.N. Gines. (ECF No. 1 at 323–34.)
[12] At the first level of review, Dr. Walker, Chief Physician & Surgeon of RJDCF, noted that "[a]fter a thorough examination it has been determined that a lower bunk chrono and extra mattress chrono will not be approved. They are not medically indicated." (ECF No. 50 at 63.) At the second level of review, Dr. Roberts, Chief Medical Executive of RJDCF, and M. Glynn, Chief Executive Officer of RJDCF, stated

as to his request for lower bunk and double mattress chronos was denied at the first, second, and third level of review on the basis that it was duplicative of his first appeal, which was still pending at the time. (*Id.* at 72–76.)

Plaintiff filed a third 602 appeal against Defendant Yu on September 19, 2015, again contesting Defendant Yu's decision not to renew Plaintiff's lower bunk and double mattress chronos. (*Id.* at 78–79.) This appeal was screened out on October 24, 2015, as duplicative of Plaintiff's two prior appeals and because Defendant Yu was no longer a physician at RJDCF. (*Id.* at 80.)

## III. DISCUSSION

### A. Legal Standards

#### 1. Motion to Dismiss for Failure to State a Claim

The Federal Rules of Civil Procedure require that a plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard that Rule 8 announces does not require detailed factual allegations, and the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citing *Twombly*, 550 U.S. at 555).

*///*

---

that "a lower bunk and double mattress are not medically indicated" and that Plaintiff's "medical problems have clearly been acknowledged by professional health care staff familiar with [his] medical history." (*Id.* at 65.) At the third, final level of review, J. Lewis, Deputy Director of the Policy and Risk Management Services of the California Correctional Health Care Services, stated that Defendant Yu "completed multiple in-depth assessments, noted review of [Plaintiff's] history, current symptoms, and x-ray results, and determined [Plaintiff] does not meet the Inmate Medical Services Policies and Procedures . . . criteria for a bottom bunk accommodation." (*Id.* at 67.) Lewis then found that "[a]fter review, no intervention at the Director's Level of Review is necessary as [Plaintiff's] medical condition has been evaluated and [Plaintiff is] receiving treatment deemed medically necessary." (*Id.* at 68.)

A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. *See Twombly*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Cooney v. Rossiter*, 583 F.3d 967, 971 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). The mere possibility of misconduct falls short of meeting this plausibility standard. *Iqbal*, 556 U.S. at 678–79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In ruling on a Rule 12(b)(6) motion to dismiss, the court does not look at whether the plaintiff will "ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court may consider allegations contained in the pleadings, exhibits attached to the complaint, and documents and matters properly subject to judicial notice. *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007); *Roth v. Garcia Marquez*, 942 F.2d 617, 625 n.1 (9th Cir. 1991). The court must assume the truth of the facts presented and construe all inferences from them in the light most favorable to the nonmoving party. *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992). However, the court is "not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994). Moreover, when an allegation in the complaint is refuted by an attached document, the Court need not accept the allegation as true. *Roth*, 942 F.2d at 625 n.1.

///

### 2. Standard Applicable to *Pro Se* Litigants

With respect to an inmate who proceeds *pro se*, his factual allegations, "however inartfully pleaded," must be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (reaffirming that this standard applies to *pro se* pleadings post-*Twombly*). Thus, where a plaintiff appears *pro se* in a civil rights case, the Court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, in giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones v. Cmty. Redevelopment Agency of L.A.*, 733 F.2d 646, 649 (9th Cir. 1984) (internal quotation omitted).

## B. Analysis

### 1. Length of SAC

As noted above, Federal Rule of Civil Procedure 8(a)(2) requires that each pleading include a "short and plain statement of the claim." Further, "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1); *see Iqbal*, 556 U.S. at 677–78. When a complaint fails to comply with Rule 8's requirements, a district court may properly dismiss the complaint. *See United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (citing cases upholding Rule 8 dismissals where pleadings were "verbose," "confusing," "distracting, ambiguous, and unintelligible," "highly repetitious," and comprised of "incomprehensible rambling"); *McHenry v. Renne*, 84 F.3d 1172, 1178–80 (9th Cir. 1996) (upholding a Rule 8(a) dismissal of a complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant").

///

///

Here, Plaintiff's SAC is 56 pages long and attaches 326 pages of exhibits.[13]  The Court finds that Plaintiff's SAC, which is overly verbose and repetitive, along with the attachment of hundreds of pages of exhibits, violates Rule 8.  Moreover, Plaintiff's SAC violates Civil Local Rule 8.2 that provides, in pertinent part, that "[c]omplaints by prisoners under the Civil Rights Act, 42 U.S.C. § 1983" are to be written on forms "supplied by the court" and any "additional pages [are] not to exceed fifteen (15) in number."  S.D. Cal. Civ. L.R. 8.2.  This Court's Report and Recommendation on the second motion to dismiss and Judge Bashant's order adopting the Report and Recommendation alerted Plaintiff to Civil Local Rule 8.2's page-limit requirements and cautioned Plaintiff that any amended complaint **must** comply with this rule.  (ECF Nos. 46 at 28 n.27; 47 at 8 (emphasis added).)  Accordingly, for violating both Rule 8 and Civil Local Rule 8.2, the Court **RECOMMENDS** dismissal of Plaintiff's SAC.

### 2.  Eighth Amendment Claim

Plaintiff's SAC realleges that Defendant Yu violated his Eighth Amendment right to be free from cruel and unusual punishment when Defendant Yu declined to issue him a lower bunk chrono, resulting in three falls from his upper bunk.  (*See* ECF No. 50 at 7–10; 35–43.)  Defendant Yu argues that Plaintiff's SAC fails to cure the deficiencies of his original complaint and that Plaintiff's opposition only "makes conclusory statements that his Eighth Amendment claim should not be dismissed."  (ECF Nos. 51-1 at 12–13; 57 at 2.)  The Court agrees.

The factual allegations in Plaintiff's SAC as to his Eighth Amendment claim against Defendant Yu are nearly identical to those made in his FAC.  Plaintiff repeats his allegations, at times verbatim from his FAC, that Defendant Yu: (1) knew about Plaintiff's medical history and complaints of pain (ECF No. 50 at 7, 18, 22–24, 26–28); (2) knew about Plaintiff's alleged falls from his top bunk (*id.* at 7, 12–13, 28–31, 39–41); (3) knew

---

[13] Plaintiff's original complaint was 41 pages long and attached 312 pages of exhibits.  (*See* ECF No. 1).  Plaintiff's FAC was 75 pages long, attached 647 pages of exhibits, and incorporated the 312 pages of exhibits from the original complaint.  (*See* ECF No. 27.)

that Plaintiff's prison cell lacked a ladder (*id.* at 27, 32, 37); (4) knew that Plaintiff's prescribed medication would cause Plaintiff to fall off the top bunk (*id.* at 6–8, 12, 15, 18, 29, 37, 39, 47); and (5) disregarded medical opinions from different medical providers recommending a lower bunk for Plaintiff (*id.* at 13, 16, 19, 25, 46).[14] The Court has already determined in exhausting detail that these allegations fail to state an Eighth Amendment claim against Defendant Yu. (*See* ECF No. 46 at 7–24.) More importantly, Plaintiff does not allege any new, relevant factual allegations against Defendant Yu with respect to his Eighth Amendment claim.[15] Accordingly, the Court **RECOMMENDS** dismissal of Plaintiff's Eighth Amendment claim against Defendant Yu for failure to state a claim.[16]

### 3. First Amendment Claim

When previously determining whether to recommend granting Plaintiff leave to amend his FAC, the Court noted that in Plaintiff's opposition to the second motion to dismiss, Plaintiff asserted for the first time that "[Defendant] Yu seemed mad that Plaintiff put in an appeal against him as staff misconduct, and was taking away Plaintiff's lower bunk chrono in retaliation." (ECF No. 46 at 28 (quoting ECF No. 40 at 26).) Plaintiff further asserted that after he filed his first 602 appeal contesting Defendant Yu's decision not to renew Plaintiff's lower bunk chrono, "Defendant Yu would no longer discuss or

---

[14] Plaintiff also alleged in his FAC that Defendant Yu purposefully ignored Volume 4, Chapter 23 of the California Correctional Health Care Service ("CCHCS") procedures, which he alleged provides that "[a]dvance age [sic] of 60 automatically qualify for lower tier lower bunk." (ECF No. 27 at 25.) The Court previously found that the language of CCHCS policies and procedures directly contradicted Plaintiff's allegation. (ECF No. 46 at 20.) Plaintiff makes no such allegation in his SAC. He does, however, attach as an exhibit an Inmate/Parolee Request form dated May 30, 2016, in which he requested a copy of the CCHCS policies and procedures because "advance age [sic] of 60 automatically qualify for lower bunk." (ECF No. 50 at 85.)

[15] In his motion, Defendant Yu contends that Plaintiff makes one new allegation—"that in January 2014, Plaintiff had problems with his right knee while sitting 'Indian style,' on his lower bunk requiring a 'tap [and] drain' to his knee." (ECF No. 51-1 at 13 (citing ECF No. 50 at 20).) However, Plaintiff previously made this exact allegation in paragraph 74 of his FAC. (*See* ECF No. 27 at 34.)

[16] Defendant Yu argues that he is entitled to qualified immunity as to Plaintiff's Eighth Amendment claim. (ECF No. 51-1 at 14–15.) As the Court has determined twice before, because no constitutional right was violated under the facts alleged in Plaintiff's SAC, Defendant Yu is entitled to qualified immunity. (*See* ECF Nos. 21 at 30; 46 at 30.)

report anything Plaintiff had to say, and began to dismiss him from his office and ignored Plaintiff from anything else he had to say." (*Id.*) The Court construed these assertions as an argument that Defendant Yu continued to deny Plaintiff a lower bunk accommodation, and took additional punitive action against him, in retaliation for filing a 602 appeal and not for a valid medical reason. Based on these assertions, the Court recommended that Plaintiff be given leave to amend his complaint for a second time. (*Id.*)

In his SAC, Plaintiff asserts a First Amendment retaliation claim against Defendant Yu. Specifically, Plaintiff alleges that as retaliation for Plaintiff's filing of his first 602 appeal on or around May 13, 2015, "Defendant Yu on June 5, 2015[,] filed a CDCR 7410 . . . taking away [Plaintiff's] lower bunk accommodations." (ECF No. 50 at 32 (citing *id.* at 214).) Plaintiff further alleges that Defendant Yu "continued not to renew [his] lower bunk accommodation in deliberate retaliation." (*Id.* at 33.)

An inmate suing a prison official pursuant to § 1983 for retaliation must allege sufficient facts that show: (1) the prison official took some adverse action against the inmate (2) because of (3) the inmate's protected conduct and that the adverse action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate penological purpose. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). For the reasons discussed below, the Court finds that Plaintiff fails to allege a plausible retaliation claim against Defendant Yu.

> a. *Elements 1, 2, and 3*

As to the first element, Defendant Yu does not address in his opposition whether his decision not to renew Plaintiff's lower bunk chrono constitutes an adverse action sufficient to plead a First Amendment retaliation claim. Because Defendant Yu's decision affected Plaintiff's housing accommodations, the Court finds that Plaintiff's claim sufficiently alleges the adverse action element. *See, e.g.*, *Pratt v. Rowland*, 65 F.3d 802, 804 (9th Cir. 1995) (finding an inmate's transfer from a single-cell to a double-cell was an adverse action sufficient to plead a First Amendment retaliation claim); *see also Cejas v. Paramo*, No.: 14-CV-1923-WQH(WVG), 2017 WL 1166288, at *5 (S.D. Cal. Mar. 28, 2017) ("An

otherwise permitted action can be the basis for a retaliation claim if performed with a retaliatory motive . . . ."); *Walker v. Cal. Dept. of Corr.*, No. 2:09–cv–0569 WBS KJN P, 2014 WL 268585, at *3 (E.D. Cal. Jan. 22, 2014) ("[T]he interest asserted in a retaliation claim is the right to be free of conditions that would not have been imposed but for the alleged retaliatory motive."). Plaintiff's claim also sufficiently alleges the third element, as the filing of an inmate grievance is protected conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1271 n.4 (9th Cir. 2009); *Rhodes*, 408 F.3d at 568. However, Plaintiff's claim falls short on the second element—causation.

The causation element of a First Amendment retaliation claim requires an inmate to allege facts that show that the inmate's protected conduct was the substantial or motivating factor underlying the prison official's adverse action. *Brodheim*, 584 F.3d at 1271. An inmate must "allege a causal connection between the adverse action and the protected conduct." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). In other words, "there must be evidence linking the alleged retaliation to the exercise of" the protected conduct. *Canovas v. Cal. Dept. of Corr.*, No. 2:14–cv–2004 KJN P, 2014 WL 5699750, at *3 (E.D. Cal. Oct. 30, 2014) (footnote omitted). However, "[b]ecause direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive a dismissal." *Watison*, 668 F.3d at 1114. Nevertheless, timing alone is generally not enough to support an accusation of retaliation when "there is little else to support the inference." *See Pratt*, 65 F.3d at 808; *accord O'Brien v. Gularte*, No. 18-cv-00980-BAS-MDD, 2019 WL 77112, at *3 (S.D. Cal. Jan. 2, 2019).

Here, Plaintiff alleges that Defendant Yu "[took] away" and then "continued not to renew" his lower bunk chrono in retaliation because Plaintiff filed a 602 appeal contesting Defendant Yu's initial decision not to renew his expiring lower bunk chrono. (ECF No. 50 at 32–33.) As previously stated, the records attached to Plaintiff's SAC indeed show that on June 5, 2015, Defendant Yu filed a 7410 chrono updating Plaintiff's housing accommodations to "Unrestricted," as opposed to "Bottom Bunk." (*Id.* at 214.) However,

Defendant Yu's notes from his May 13, 2015 appointment with Plaintiff indicate that he had already decided not renew Plaintiff's expiring lower bunk chrono *before* Plaintiff filed his appeal. (*See id.* at 115.) Thus, the alleged adverse action, more accurately stated, is that Defendant Yu did not change his initial May 13, 2015 decision not to renew Plaintiff's expiring lower bunk chrono, and then officially updated Plaintiff's chrono to reflect this decision, after Plaintiff filed his 602 appeal. The issue then becomes whether Plaintiff has adequately alleged that his appeal was the substantial or motivating factor in Defendant Yu's decision *not* to change his mind. *See Brodheim*, 584 F.3d at 1271.

The Court finds that Plaintiff does not allege any facts in his SAC that show a causal link between his 602 appeal and Defendant Yu's decision not to change his initial determination that Plaintiff did not have a medical need for a lower bunk. Plaintiff makes several references to "retaliation" throughout his SAC, but merely concludes, without any factual support, that Defendant Yu's decision not to change his mind was retaliatory.[17] Although "direct evidence of retaliatory intent rarely can be pleaded in a complaint," *Watison*, 668 F.3d at 1114, Plaintiff does not allege any facts that would circumstantially show[18] that Defendant Yu acted with a retaliatory motive. Unlike Plaintiff's opposition to the second motion to dismiss wherein Plaintiff stated that "[Defendant] Yu seemed mad that Plaintiff put in an appeal against him as staff misconduct," and that "Defendant Yu would no longer discuss or report anything Plaintiff had to say, and began to dismiss him

---

[17] *See, e.g.*, ECF No. 50 at 24 ("Defendant Yu admit[t]ed and documented that he saw Plaintiff for a CDCR 602 appeal against himself. Defendant Yu was deliberate indifference [sic] to Plaintiff['s] serious medical need, and in retaliation took away the lower bunk."), 26 ("[A]s deliberate retaliation Defendant Yu took an adverse action against Plaintiff for his . . . filing grievances [, and] his protected conduct was the substantial or motivating factor behind Defendant Yu's conduct."), 33 ("Defendant Yu was aware of the facts that Plaintiff filed the grievance against [Defendant] Yu. Defendant Yu continued not to renew the [m]edical lower bunk accommodation in deliberate retaliation.").

[18] Circumstantial evidence of retaliatory motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) the defendant's expressed opposition to the protected conduct; and (3) other evidence showing that the defendant's reasons for the challenged action were false or pretextual. *McCollum v. Cal. Dept. of Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011).

from his office," Plaintiff makes no such allegations of animus in his SAC.[19] (ECF No. 40 at 26.)

Additionally, the Court cannot reasonably infer from the chronology of events that Defendant Yu acted with a retaliatory motive because Defendant Yu made the decision not to renew Plaintiff's lower bunk chrono before Plaintiff filed his appeal. *See Watison*, 668 F.3d at 1114. At the May 13, 2015 appointment, Defendant Yu told Plaintiff that he had "no medical indication" for a lower bunk, but he would order x-rays "to better understand the medical issues," and he "may reevaluate consideration" after reviewing Plaintiff's x-rays. (ECF No. 50 at 115.) At the June 5, 2015 appointment, Defendant Yu then discussed Plaintiff's x-ray results with Plaintiff, explained to Plaintiff that there was still no indication that his medical needs warranted a lower bunk, and reminded Plaintiff that he could appeal further. (*Id.* at 111.) Defendant Yu then filed the 7410 chrono that Plaintiff alleges took away his lower bunk twelve days before it was allegedly set to expire. Although Defendant Yu did not *officially* update Plaintiff's chrono to unrestricted until after Plaintiff filed his 602 appeal, Defendant Yu waited until after he had reviewed Plaintiff's x-rays—as he previously noted that he would—and explained again to Plaintiff why his renewal request was still denied before officially updating Plaintiff's chrono. Moreover, Defendant Yu updated Plaintiff's chrono more than three weeks after Plaintiff had filed his 602 appeal and even encouraged Plaintiff to continue his appeal. (*See id.*) Looking at the facts as a whole, timing does not circumstantially show evidence of retaliatory motive in this case. Plaintiff fails to allege a causal connection between the filing of his 602 appeal and Defendant Yu's decision not to change his mind regarding Plaintiff's medical need for a lower bunk chrono.

---

[19] Even if Plaintiff had included allegations in his SAC that Defendant Yu "would no longer discuss or report anything Plaintiff had to say" and "began to dismiss him from his office" after he filed his appeal, Plaintiff's medical records contradict these allegations and show that Plaintiff had multiple appointments with Defendant Yu after he filed his appeal. (*E.g.*, ECF No. 50 at 109, 111, 113.) Defendant Yu's June 5, 2015 notes even indicate that he "told Plaintiff he [could] come back any time for medication." (*Id.* at 111.) *See Roth*, 942 F.2d at 625 n.1 ("[W]hen the allegations of the complaint are refuted by an attached document, the Court need not accept the allegations as being true.").

### b. Element 4

Because Plaintiff fails to adequately allege the second element, Plaintiff's SAC fails to satisfy the pleading requirements of a First Amendment retaliation claim. Nevertheless, the Court finds that Plaintiff also fails to meet the fourth and fifth element as well. The fourth element of a retaliation claim requires an inmate to show that the state actor's adverse action chilled the inmate's exercise of his First Amendment rights. *Rhodes*, 408 F.3d at 567. The appropriate inquiry is not whether the inmate was actually chilled from engaging in protected activity, but objectively, whether "the adverse action at issue would chill or silence a person of ordinary firmness from future First Amendment activities." *Brodheim*, 584 F.3d at 1271.

In his motion, Defendant Yu argues that his decision not to change his initial determination that Plaintiff did not have a medical need for a lower bunk chrono "would not deter a person of ordinary firmness from pursing his claim through higher levels of the grievance process or filing subsequent grievances." (ECF No. 51-1 at 18.) Plaintiff in response sets forth the applicable standard, but provides no argument as to why a person of ordinary firmness would be deterred by Defendant Yu's actions. (*See* ECF No. 56 at 18–19.)

The Court agrees with Defendant Yu and finds that his actions would not have deterred a reasonable person from pursuing an appeal through higher levels of the grievance process or from filing additional appeals. In fact, as previously discussed, Defendant Yu's notes from the June 5, 2015 appointment state that he told Plaintiff that his request was "denied at this time" but *reminded* Plaintiff "that he [could] appeal further." (ECF No. 50 at 111.) Further, on July 20, 2015, Defendant Yu advised Plaintiff to await the determination of his appeals which "would maybe grant his request." (*Id.* at 109.) Additionally, Plaintiff has not alleged any facts in his SAC that support his position that Defendant Yu's decision not to change his mind would chill a person of ordinary firmness from further appealing. Plaintiff's SAC merely sets forth a legal conclusion that the "facts establish that . . . Defendant Yu['s] actions chilled Plaintiff['s] protected activities." (ECF

No. 50 at 33.)  Accordingly, Plaintiff has not sufficiently alleged that Defendant Yu's decision not to change his mind would chill a person of ordinary firmness from further appealing his decision.

### c. Element 5

Finally, the fifth element of a retaliation claim requires an inmate to allege facts that could show that the challenged action "did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 568.  The inmate bears the burden of pleading and proving the absence of legitimate correctional goals for the defendant's challenged conduct. *Pratt*, 65 F.3d at 806.

In his motion, Defendant Yu argues that "Plaintiff fails to allege facts supporting the lack of legitimate correctional goals for denying an agile, muscular, basketball-playing inmate such as Plaintiff a lower bunk chrono so that lower bunks would be available for more justifiable inmates."  (ECF No. 51-1 at 20.)  Plaintiff in response argues that in paragraph 99 of his SAC, he asserted that "Defendant Yu['s] retaliation conduct did not advance [a] legitimate penological interest," and that "Defendant Yu can not [sic] present any legitimate penological interest, but to harm Plaintiff."  (ECF No. 56 at 22 (citing ECF No. 50 at 33).)

The Court agrees with Defendant Yu and finds that Plaintiff has not met his burden of showing that Defendant Yu's conduct did not advance a legitimate correctional goal. Plaintiff's SAC offers nothing more than a conclusory allegation devoid of factual support. Furthermore, the medical documents Plaintiff attaches to his SAC are replete with evidence that Defendant Yu's decision reflected his medical judgment based upon the medical record before him.[20]  Accordingly, the Court finds that Plaintiff fails to sufficiently allege the fifth element of a First Amendment retaliation claim.

---

[20] Defendant Yu's notes from his first appointment with Plaintiff on February 10, 2015, indicate that Plaintiff was experiencing dull, low back pain but "was playing basketball at least an hour a day, more if he can."  (ECF No. 50 at 119.)  At Plaintiff's next appointment on May 13, 2015, Defendant Yu noted that Plaintiff reported neck and low back pain, but was exercising; could stand, sit, bend, and turn his body without difficulty; could "walk erect" without limping; and had not had a seizure since he had been in

18

### d. *Conclusion*

For the foregoing reasons, Plaintiff's SAC fails to assert a viable First Amendment retaliation claim. Plaintiff's allegations raise a mere possibility that Defendant Yu acted with retaliatory motive and therefore fall short of meeting the required plausibility standard. Because the Court cannot draw the reasonable inference that Defendant Yu is liable for the misconduct Plaintiff alleges, the Court **RECOMMENDS** dismissal of Plaintiff's First Amendment claim against Defendant Yu for failure to state a claim.

### 4. State Law Claims

Plaintiff's SAC raises two California state law claims that he previously raised in his FAC: medical negligence and malpractice in violation of California Government Code § 845.6 and violation of Article 1, Sections 15 and 17 of the California Constitution. (ECF No. 50 at 48, 52; *see* ECF No. 27 at 65–71.) Judge Bashant previously adopted this Court's Recommendation to decline to exercise supplemental jurisdiction over Plaintiff's state law claims because Plaintiff's FAC failed to state any federal law claims. (ECF No. 47 at 7.) As discussed above, Plaintiff failed to amend his complaint to state an Eighth Amendment or First Amendment claim against Defendant Yu. Accordingly, the Court **RECOMMENDS that the District Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims**.

---

prison. (*Id.* at 115.) At Plaintiff's June 5, 2015 appointment, Defendant Yu noted that Plaintiff again reported lower back pain, but that Plaintiff was "quick in and out of the chair," "walking erect," and still playing basketball for exercise. (*Id.* at 111.) At Plaintiff's June 22, 2015 appointment, Defendant Yu noted that Plaintiff again reported lower back pain but also left knee pain. (*Id.* at 113.) However, Defendant Yu observed that Plaintiff could still "walk erect, fast, [with] no limping or difficulty," that his left knee did not show "laxity, tenderness, swelling," or "difficulty bending." (*Id.*) Defendant Yu ordered x-rays of Plaintiff's knee to check for abnormalities. (*Id.*) At Plaintiff's July 20, 2015 appointment, Defendant Yu noted that Plaintiff reported pain in his upper back, right shoulder, elbow, and knee. (*Id.* at 109.) However, Defendant Yu observed that Plaintiff's right shoulder had a "full range of motion" and there was "no swelling in the knee bilaterally." Defendant Yu further observed Plaintiff "walk[] erect" with "no limping," and hop onto and move on "the table without any difficulty." (*Id.*) Defendant Yu ordered x-rays of Plaintiff's upper back. (*Id.*) At Plaintiff's August 20, 2015 appointment, Defendant Yu noted that Plaintiff reported that he was playing basketball and exercising every day. (ECF No. 1 at 281.) Defendant Yu also observed Plaintiff "walking erect" without limping and that he could get "in and out of the chair" and "onto the examination table without any difficulty." (*Id.*)

5.      Requests for Injunctive Relief

Although the Court recommends dismissal of all of Plaintiff's claims, and requests for specific remedies cannot stand without a supporting cause of action, the Court will still briefly address Plaintiff's requests for injunctive relief.  Plaintiff seeks a preliminary injunction ordering Defendant Yu to provide Plaintiff with a cell ladder and a life[-]long lower bunk chrono; and (2) the installation of ladders in cells statewide to prevent prisoners from falling off the top bunk.  (ECF No. 50 at 54.)  Although Defendant Yu is entitled to qualified immunity, qualified immunity "means only that [a] defendant[] 'need not respond in damages.  It does not mean that they cannot be enjoined from future violations of [a plaintiff's] rights.'"  *Walker v. Gomez*, 370 F.3d 969, 978 (9th Cir. 2004) (quoting *Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001)).  However, as discussed below, the Court finds that Plaintiff fails to show that he would be entitled to injunctive relief even if he had asserted a viable claim for relief.

As to Plaintiff's request for a preliminary injunction ordering Defendant Yu to provide him with a cell ladder and a life-long lower bunk chrono, Plaintiff alleges that Defendant Yu was "fired," and therefore is no longer employed at RJDCF.  (ECF No. 50 at 1, 46.)  The Court also notes that Plaintiff's third 602 appeal was denied in part because Defendant Yu "no longer works" at RJDCF.  (*Id.* at 80.)  Therefore, as it appears Defendant Yu is no longer employed at RJDCF, he cannot "play any role in Plaintiff's current conditions of confinement."  *Singleton v. Kernan*, No. 16-cv-02462-BAS-NLS, 2017 WL 131831, at *3 (S.D. Cal. Jan. 13, 2017) (denying motion for preliminary injunction in part because the inmate plaintiff "was no longer housed in the same institution where most of the [d]efendants [were] alleged to be employed"); *Spencer v. Hernandez*, No. 08–CV–0416-JM (JMA), 2009 WL 331007, at *8 (S.D. Cal. Feb. 9, 2009) ("[T]here is no chance of future retaliation against Plaintiff by [Defendant], who allegedly threatened Plaintiff, because [Defendant] no longer works at [RJDCF] where Plaintiff is located.").  Moreover, Defendant Yu would be powerless to effectuate an injunction even if the Court were to issue one.

As to Plaintiff's request for the statewide installation of cell ladders to prevent other prisoners from falling off the top bunk, Plaintiff lacks standing to seek such relief on behalf of other prisoners. *Mayweathers v. Hickman*, No. 05cv713 WQH (CAB), 2008 WL 4206822, at *8 (S.D. Cal. May 16, 2008); *e.g.*, *Spencer*, 2009 WL 331007, at *8 (finding that the inmate plaintiff lacked standing to seek an injunction ordering that cameras be installed "anywhere a corrections officer might be able to 'hurt someone'"). Accordingly, the Court finds that Plaintiff fails to show that he would be entitled to injunctive relief even if he had asserted a viable cause of action.

### 6. <u>Leave to Amend</u>

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a court should grant leave to amend when justice so requires "even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (citation omitted). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *see also Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 893 (9th Cir. 2010). A court may properly deny leave to amend where a plaintiff has already amended the complaint and does not correct the deficiencies that caused the original complaint to fail to state a claim on which relief can be granted. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809–10 (9th Cir. 1988) ("Repeated failure to cure deficiencies by amendments previously allowed is [a] valid reason for a district court to deny a party leave to amend." (citation omitted)). The "district court's discretion over amendments is especially broad where the court has already given a plaintiff one or more opportunities to amend his complaint." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987) (citations omitted).

#### a. *Eighth Amendment Claim*

The Court has twice provided Plaintiff with a detailed statement of the factual deficiencies of his original compliant and FAC as to his Eighth Amendment claim against Defendant Yu. (*See* ECF No. 21, 26, 46, 47.) Yet, Plaintiff's SAC does not set forth any

new, relevant facts that this Court has not previously considered and therefore, cannot possibly correct the deficiencies that caused Plaintiff's original complaint and FAC to fail. For repeated failure to cure his deficiencies, the Court **RECOMMENDS** that Plaintiff's Eighth Amendment claim against Defendant Yu be **dismissed with prejudice**.

### b. First Amendment Claim

As to Plaintiff's First Amendment retaliation claim against Defendant Yu, the Court notes that this is the first time Plaintiff has alleged this claim. However, in granting Plaintiff leave to amend his FAC, Judge Bashant was concerned that "Plaintiff [had] never alleged retaliation by Defendant Yu in the two years this case [had] been pending, and only did so in response to a second motion to dismiss," but agreed to permit Plaintiff a "final opportunity" to amend his complaint. (ECF No. 47 at 6.) However, in amending his complaint, Plaintiff failed to allege the very facts that prompted this Court to recommend Plaintiff be granted leave to amend.[21] As Defendant Yu argues, "Plaintiff was clearly given leave to amend to add such allegations if he so desired, but he chose not [to] do so." (ECF No. 51-1 at 21.) Moreover, the Court finds that Plaintiff could not allege any facts that would show that Defendant Yu's actions created a chilling effect or did not reasonably advance a legitimate correctional goal. Therefore, because any attempt by Plaintiff to amend his First Amendment retaliation claim against Defendant Yu would likewise fail, amendment would be futile. Accordingly, the Court **RECOMMENDS** that Plaintiff's First Amendment claim against Defendant Yu be **dismissed with prejudice**.

## IV. CONCLUSION

For the reasons discussed above, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) accepting this Report and Recommendation; and (2) **GRANTING** Defendant Yu's Motion to Dismiss (ECF No. 51).

///

---

[21] As discussed above, even if Plaintiff had added these allegations, they are refuted by the medical records Plaintiff attaches to his SAC.

**IT IS ORDERED** that no later than **February 12, 2019**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 22, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated: January 15, 2019

Hon. Jill L. Burkhardt
United States Magistrate Judge

16-cv-01998-BAS-JLB